Filed 12/16/20  P. v. Rogers CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL STEVEN ROGERS,<br><br>    Defendant and Appellant. | 2d Crim. No. B296696<br>(Super. Ct. No. 2018024455)<br>(Ventura County) |

Daniel Steven Rogers appeals a judgment following his conviction for home invasion robbery (Pen. Code,[1] §§ 211, 213, subd. (a)) and conspiracy to commit a crime (§ 182, subd. (a)(1)). He fell within the purview of the "Three Strikes" law and the trial court sentenced him to an aggregate prison sentence of 17 years.  We conclude, among other things, that:  1) sufficient evidence corroborated the evidence presented against him by his accomplices, and 2) the trial court erred by sentencing him to a concurrent 12-year sentence on the conspiracy count.  (§ 654.)

---

[1] All statutory references are to the Penal Code.

We modify the judgment to stay the sentence on the conspiracy count. As so modified, the judgment is affirmed.

FACTS

On June 7, 2017, Aaron Smith reported to police that three African-American men entered his home, assaulted him, and took cash from a table in his residence. The men who attacked Smith were wearing masks. Smith testified he was unable to identify the men who attacked him because their faces were covered.

Jenny Batdorj, Smith's neighbor, made a 911 call to police. In that call she said she saw "[a] bunch of people" running from Smith's residence screaming "he's dead, he's dead." She said that "two of 'em ran" to one side of the building and "two of 'em ran" to the other side.

On August 16, 2017, the police interviewed Brandon Jefferson. Jefferson admitted that he, along with Xavier Smith, Brandon Dreher, and Rogers, committed the June 7th robbery. He said Rogers was the "lookout." The victim Aaron Smith had owed Jefferson money for pills he had supplied to Smith.

Jefferson testified Smith sold prescription drugs. Rogers texted Jefferson stating, "What's up with TO, dude [Aaron Smith]." Jefferson responded on June 7, 2017, that Smith "just got a shipment . . . . he's loaded." Rogers responded, "[L]et's go scope the scene and then we can do it."

In August 2017, Dreher was interviewed by the police. He confessed that he was involved in the June 7th crime. He said he and Rogers acted as lookouts.

About two months after the June 7th robbery, Sheriff's Deputy James Douglas interviewed Rogers. In response to a question about where he was on June 7, Rogers said he was watching his girlfriend's son. Douglas testified that Rogers's

2

girlfriend had sent Rogers a text message immediately after the time the robbery took place. In that message she asked Rogers why he left her child alone. Rogers responded to her message by stating he was in Thousand Oaks "performing a liq." Douglas testified a "liq" is a slang term meaning a criminal act such as a burglary or robbery.

## DISCUSSION

### *Corroboration of the Evidence Presented by The Accomplices*

Rogers contends the judgment must be reversed because there was insufficient evidence to corroborate the evidence the People presented from his accomplices. We disagree.

Evidence presented by accomplices to a crime must be corroborated. (*People v. Williams* (2013) 56 Cal.4th 630, 678-679.) " ' "The trier of fact's determination on the issue of corroboration is binding on the reviewing court unless the corroborating evidence should not have been admitted or does not reasonably tend to connect the defendant with the commission of the crime." ' " (*Ibid.*) " ' "The corroborating evidence may be circumstantial or slight and entitled to little consideration when standing alone, and it must tend to implicate the defendant by relating to an act that is an element of the crime." ' " (*Id.* at p. 679.) " ' "The corroborating evidence need not by itself establish every element of the crime, but it must, without aid from the accomplice's testimony, tend to connect the defendant with the crime." ' " (*Ibid.*)

Here there was sufficient corroborating evidence. Batdorj's 911 call corroborated Jefferson's statement to police that there were four individuals involved in the June 7th crime.

Rogers states, "Batdorj actually testified that she did not know exactly how many persons she saw running from Aaron

3

Smith's apartment." But he selectively cites only a portion of her testimony. Batdorj was asked about the number of people she saw running from Smith's apartment. She initially answered, "I don't know exactly, but I would say probably three or four." She did not remember her 911 call. But she was later shown the 911 transcript and she was asked, "Did you say anything about four of them might be there?" Batdorj responded, "Yeah, I did."

Moreover, the jury could reasonably find that it was more than highly probable that her 911 call in 2017 provided more accurate information about the number of individuals than her memory about the event in 2019 when she testified. In her 911 call, she provided police with *specific* information about the number of men who ran from the apartment and the location they ran to. She said two men ran to one side of the building and two ran to the other side. In 2017, she provided the information to the police *immediately* after the crime took place when her memory was fresh. That her memory of the incident was not as clear in 2019 is not surprising. It is well established that the passage of time "may impair memories." (*People v. Nelson* (2008) 43 Cal.4th 1242, 1251.) In her 911 call, she also said she heard "screaming like he's dead, he's dead." This supported a reasonable inference that the four men were running away because they mistakenly believed Smith died during the robbery.

Rogers claims there was cell phone evidence introduced, but it was not precise enough to place him "directly" at Smith's apartment. He contends it could only provide a rough estimate that his "phone was within 2.3 miles and one mile of Aaron Smith's apartment the night of the incident." But Kathryn Munyon, a sheriff's department's "intelligence analyst," testified those distances related to the closest cell phone towers that were

4

utilized at the time of the crime. That evidence may not have the precision of a GPS locator, but the jury could find it was evidence showing that it was more than highly probable that he was in the area where the crime took place at the time of the robbery. (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1022-1023.) Cell phone evidence may be introduced to show that a defendant's alibi is false. (*Id.* at p. 1023.) "[F]alse or misleading statements made to authorities may constitute corroborating evidence." (*Id.* at p. 1022.) A showing that the defendant lied to the police may prove consciousness of guilt. (*Id.* at p. 1029.) The cell phone evidence showed that Rogers lied to the police about his whereabouts at the time of the robbery and that he told that lie because of his consciousness of guilt.

The text messages between Rogers and his girlfriend were highly incriminating. These showed his participation in the June 7th crime. In one message Rogers admitted that on June 7 he was "performing a liq." The term "liq" is slang for a criminal act such as a burglary or robbery. The text messages were additional evidence showing Rogers had lied to the police about his whereabouts at the time of the June 7th crime. It was also additional evidence showing his consciousness of guilt. Moreover, the text messages between Rogers and Jefferson provided further corroboration regarding Rogers's motive, plan, and participation in the crime against Smith. When Jefferson texted Rogers on June 7, 2017, to inform him that Smith "just got a shipment . . . he's loaded," Rogers replied, "So let's go scope the scene and then we can do it." This was highly incriminating evidence. As the People note, Rogers's "own statements sufficiently corroborated" what the accomplices claimed.

5

*Sentencing*

The trial court sentenced Rogers to an aggregate term of 17 years. It imposed six years for the robbery count; it doubled that to 12 years because Rogers had a prior strike conviction. The court then added a consecutive five years for a true finding on a prior prison term enhancement. (§ 667, subd. (a)(1).) The court then imposed a concurrent 12-year sentence for the conspiracy count.

Rogers contends the trial court erred by sentencing him to the 12-year concurrent sentence for conspiracy because the conspiracy contemplated only the act performed in the substantive offense. The People agree. They claim the sentence on the conspiracy count must be stayed.

The trial court found "[t]he crimes and their *objectives were not independent* from" each other. (Italics added.) " 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Correa* (2012) 54 Cal.4th 331, 336, § 654.) Here the court imposed a 12-year concurrent sentence for the conspiracy count. Because the court found the offenses were incident to one objective, it was required to stay the sentence on the conspiracy count. (*Ibid.*; § 654; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1468.)

DISPOSTION

The judgment is modified by imposing and staying the sentence on the conspiracy count. The trial court is directed to prepare and serve a new abstract of judgment. As so modified, the judgment is affirmed. (*People v. Alford*, *supra*, 180 Cal.App.4th at p. 1474.)

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

7

David R. Worley, Judge

Superior Court County of Ventura

_____

Earl E. Conaway III, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.